UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOUGLAS MARTIN,

    Plaintiff,

    v.

OFFICER LUCKETT, et al.,

    Defendants.

No. 07 C 2800
Judge James B. Zagel

# MEMORANDUM OPINION AND ORDER

Plaintiff, Douglas Martin ("Martin"), alleges various claims of excessive force stemming from his arrest following a multi-jurisdictional car chase. Defendants now move for summary judgment. For the following reasons, Defendants' motions for summary judgment are granted in part and denied in part.

## I. PRELIMINARY ISSUES

### A. Motion To Strike Plaintiff's Statement of Additional Facts.

Defendants moved to strike Plaintiff's statement of additional facts because of Plaintiff's failure to file various exhibits. For the reasons stated in open court, I granted Plaintiff leave to file these missing exhibits, and also granted Defendants an opportunity to respond to these exhibits. Accordingly, Defendants' motion to strike is denied.

### B. Motion To Strike Expert Report of Michael Roach.

Defendants also move to strike the report of Plaintiff's canine expert, Michael Roach ("Roach"). First, Defendants state that the report is inadmissible because it is not accompanied by a supporting affidavit verifying its authenticity. I decline to strike the report on these grounds alone.

Next, Defendants move to strike Roach's opinion that the use of the canine Django in effecting Plaintiff's arrest was excessive. In his report, Roach concludes that Officer Luckett's ("Luckett") use of Django was unwarranted and excessive. Though testimony from a police practices expert can be admissible in a Section 1983 use of force action, the Seventh Circuit prohibits an expert from testifying as to the ultimate issue of whether an officer had used excessive force. *See Thompson v. City of Chicago*, 472 F.3d 444, 457-58 (7 th Cir. 2006). Accordingly, this conclucion is stricken.

Defendants also argue that Roach's conclusion that enough officers were present at the scene and that a canine was not needed should be stricken because he fails to explain how he reached his conclusion. *See Zenith Elects. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005). I agree and strike this conclusion from Roach's report.

Roach further opines that Luckett is a "Macho canine handler" who intentionally deployed his canine to attack Plaintiff without justification. The standard for an excessive force claim, however, is objective reasonableness, and an officer's subjective intent is irrelevant. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Moreover, Roach's opinion relies solely on Luckett's comments heard on the video right after the incident and does not explain his methodology for his opinion. Accordingly, I strike this opinion from the report.

Another opinion expressed in Roach's report is that Django and Luckett were deficiently trained. Roach, however, did not review Luckett or Django's basic training records from Vohne Liche Kennels or the deposition testimony of the Vohne Liche trainer, Kenneth Licklider. Indeed, Plaintiff admits that Luckett and Django successfully completed a five-week, 200-hour training program at Vohne Liche Kennels and that they were certified for the dual purposes of

2

apprehension and drug work. Though it is true that Roach might not have considered all available documents in rendering his opinion, such factors go to the weight to be afforded his opinion and not their admissibility. I decline to strike this opinion from Roach's report.

## II. STATEMENT OF FACTS

On May 25, 2005, Plaintiff was intoxicated with alcohol and used his brother's pickup truck to obtain crack cocaine and sexual favors from a prostitute. Plaintiff had consumed crack cocaine when he saw police officers and panicked. Letting the woman out of his car, he was pulled over by Joliet officers. When the officers opened the passenger door, plaintiff drove-off, instigating an hour-long, multi-jurisdictional pursuit. Plaintiff drove on and off the interstate, drove through the streets of Romeoville, broke multiple traffic laws, caused criminal damage to property, drove over a median, across sidewalks, yards, and driveways to evade police. Plaintiff was driving while under the influence of alcohol and crack cocaine.

At one point during the chase, Martin stopped his vehicle in Romeoville. Officers exited their vehicles and approached Plaintiff's truck on foot. Officer Augustine ("Augustine") attempted to open Plaintiff's driver-side door, but it was locked. Augustine then broke the window with the butt of his gun and reached to unlock the door. Martin then sped away in his vehicle nearly striking three officers, including Officer Brian Truhlar ("Truhlar") who had approached the passenger door of Martin's truck, and had to jump out of the way to avoid being hit by Plaintiff as he fled.

Minutes after the first stop, Plaintiff crashed his truck into a residential fence. Seconds later, Plaintiff was removed from his vehicle. One disputed fact is whether Luckett used Django to extract Plaintiff from his vehicle. A chaotic scene followed, all of which was captured on

video.[1] Numerous officers surrounded Plaintiff, and he was thrown on top of a vehicle. The officers were attempting to handcuff Plaintiff. Whether Plaintiff was kicking and attempting to resist arrest is a disputed fact. It is undisputed that officers yelled "stop resisting!" Defendants Truhlar and Officer Allen Downen ("Downen") struck Plaintiff in the thigh or calf when attempting to effect his arrest. Officer Thomas Budde ("Budde") struck Plaintiff with his ASP baton, though it is disputed whether Plaintiff was struck on the head or arm. It is also disputed that once Plaintiff was handcuffed, he was dropped to the curb and onto the car bumper.

After being handcuffed, Django was attached to Plaintiff's left leg. Django released his hold on Plaintiff after several commands from Luckett. Martin was then walked to Truhlar's squad car by Truhlar, Dowen and Augustine. The officers proceeded to pat Plaintiff down. There is a factual dispute regarding whether Plaintiff resisted the officers' efforts to pat him down and the force the officer's used to restrain him.

## III. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S.

---

[1] The chase is also captured on film.

317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**IV. DISCUSSION**

"A police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders. [] But that principle depends critically on the fact that the suspect is indeed subdued." *Johnson v. Scott*, 576 F.3d 658 (7th Cir. 2009). To determine whether the amount of force used during an arrest is excessive, a court must examine the totality of the circumstances. *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997). Whether excessive force was used is evaluated under the "objective reasonableness" standard whereby a court assesses whether the actor's actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (citing *Graham v. Conner*, 490 U.S. 386, 397 (1989)). Factors relevant to this evaluation include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed – to the community or to the arresting officers – if left unattended." *McDonald v. Haskins*, 966 F.2d 294 (7th Cir. 1992). Circumstances are considered "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 397.

5

A. <u>Luckett Is Entitled To Summary Judgment.</u>

Plaintiff alleges that Luckett used excessive force when assisting in Plaintiff's arrest when he used his canine. Plaintiff further alleges that Luckett intentionally used the dog to inflict bites on the Plaintiff, and that the canine was deficient in training, and known to be excessively vicious. Again, under the objective reasonableness standard, a court must determine whether an officer's actions were reasonable or not without regard for their underlying intent or motivation. *Graham*, 490 U.S. at 396. Accordingly, I do not consider Luckett's motivation for using his canine, rather, whether his use of the dog was reasonable.

In support of his motion for summary judgment, Luckett cites *Johnson v. Scott*, 576 F.3d 658 (7 th Cir. 2009). In *Johnson*, a suspect in a shooting fled from police by car, and then on foot. He surrendered as a police officer and his dog drew close, and was bit by the canine. *Id*. at 659. During the car chase, the plaintiff ignored stop signs, and exceeded the speed limit. *Id*. When the suspect encountered a road block, he continued on foot. When he finally encountered a wooden fence, he held his hands up in surrender. The officer and his canine were only six to eight feet behind the plaintiff when he surrendered, and the canine grabbed the plaintiff's arm and knocked him to the ground. *Id*. at 660. The plaintiff struggled to break the dog's bite, but the officer interpreted this as resistance and struck the plaintiff several times to subdue him. *Id*. After the officer was able to handcuff the plaintiff, he ordered the dog to release, and the canine complied. *Id*.

While recognizing that a police officer may not continue to use force against a suspect that is subdued, the Seventh Circuit recognized that "no law that we know of required Scott to take Johnson's apparent surrender at face value." *Id*. Furthermore, the Court explained that the

6

officer did not know how the suspect would react when cornered. *Id*. Moreover, a surrender does not establish that a suspect is unarmed. *Id*. The Court also noted that the time between the suspect's surrender and the use of force was only a second.

In another similar case, *Brady v. Scott*, the plaintiff, suspected of a drug transaction, had led police on a reckless car chase, endangering pedestrians and officers alike. No. 09 C 110, 2010 WL 3946527 (N.D. Ind. Oct. 5, 2010). It was not known whether the suspect was armed, and when the plaintiff exited his vehicle, the officer used his dog to apprehend the plaintiff. The plaintiff claimed that he did not plan on running on foot, but rather was attempting to surrender to police, exiting the vehicle with his hands up and lied down on the ground before the dog was released, a process that took approximately 60 seconds. *Id*. at *4. Relying on *Johnson*, the *Brady* court found that because the plaintiff could have been armed and dangerous, had led police on a high-speed chase endangering the lives of both police and bystanders, and that police could not "divine his intent" when he exited the vehicle, the officer's decision to use the dog was not unreasonable. *Id*.

The facts in this case are very similar to those of *Johnson* and *Brady*. Though Plaintiff was not involved in a shooting, he had led officers on a car chase across multiple counties, broke traffic laws, hit police vehicles, and endangered officers' lives. He admits that he was intoxicated and 'paranoid' because of using crack cocaine. As seen on the video, mere seconds passed between the time his car became stuck on the fence, and the time that he was removed from his vehicle. Significantly, minutes earlier, when Plaintiff had stopped his vehicle and Augustine broke his window, Plaintiff sped off nearly hitting at least one Romeoville police officer. From these facts, I conclude that Luckett's use of the canine was reasonable. Although

7

it is disputed as to whether or not the dog was used to extract Plaintiff from his vehicle, this fact is not material. In *Johnson*, the Seventh Circuit noted that without "minimiz[ing] the unpleasantness of having a German Shepard clam onto one's arm or leg" deploying a trained dog to bite and hold a suspect is not per se unconstitutional. *Id*. at 661. Indeed, in *Johnson*, the dog was used to hold and contain the suspect until he could be restrained by handcuffs. Similarly, here, use of the canine would be appropriate, even for the sole purpose of restraining Plaintiff until he could be subdued. Though Plaintiff does imply that the presence of multiple officers negated the need for canine use, he cites no authority for this proposition.

Plaintiff suggests that Luckett and Django were not properly trained, however, the record indicates that both Luckett and Django were certified for the purpose of apprehension. Though Django's trainers had noted that Django was at times slow to release, no trainers believed this to be an issue and did not note it as a concern on any training records. Plaintiff's written training records are required to note any problems with the canine. Likewise, handlers were required to spend at least 30 minutes daily training the animal. These sessions were to be noted in a daily activity report. Luckett advised Plaintiff that he had made such records, they had since been destroyed. Although Plaintiff speculates that these records were improperly and intentionally destroyed, there is nothing in the record to support this theory. Furthermore, Plaintiff points to records regarding an officer Kirk Villare ("Villare") who was bitten in August, 2005 by Django, while under the control of Luckett. Villare's bite, however, occurred after Plaintiff's incident. Plaintiff points to nothing to show that, even if Django did have training deficiencies, that Luckett or anyone else could have been aware of them at the time of Plaintiff's arrest.

8

Given the specific circumstances of this case, I find that Luckett is entitled to summary judgment on Plaintiff's excessive force claim.

### B. Brian Truhlar, Gary Augustine and Allen Downen Are Not Entitled to Summary Judgment For the Alleged Beating After Plaintiff Was Handcuffed.

Plaintiff alleges that Defendants Truhlar, Down, and Augustine used excessive force against Plaintiff by striking him with fists and batons while trying to handcuff Plaintiff, and then dropping him to the ground after being handcuffed. Plaintiff further contends that these Defendants beat Plaintiff, while handcuffed, prior to placing him in the squad car and during their search of his person.

Defendants argue that their use of force in handcuffing Plaintiff and during their search of his person were justified by his resistance. Defendants point to both video footage and deposition testimony to support their contention. Plaintiff's resistance, however, is under dispute. The video footage does not dispositively prove that Plaintiff was violently resisting handcuffing, or the search of his person. Furthermore, the testimony of Marla Lynn Bagdon states that she witnessed these Defendants beating Plaintiff with batons while handcuffed.

It is undisputed that Defendants Truhlar and Downen struck Plaintiff in the thigh or calf when attempting to effect his arrest. These Defendants argue that their actions were reasonable under the circumstances. I agree. Even assuming that Plaintiff was not violently resisting arrest after his vehicle had stopped, it is undisputed that Plaintiff resisted arrest by leading police on a car chase, breaking traffic laws, and hitting police vehicles. Plaintiff further admits that he was in a paranoid state. Prior to being handcuffed, Plaintiff was a threat to both the officers and the community. Courts have acknowledged that a higher degree of force is justified where a suspect

9

fails to pull over and is finally stopped. *Smith v. Darlin*, No. 97 C 0763, 1999 WL 498586, at *6 (N.D. Ill. July 8, 1999) (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989). Viewing the totality of the circumstances, I do not find that Defendants Truhlar and Downen's striking Plaintiff in the thigh or calf while attempting to effect arrest was unreasonable under the circumstances.

Plaintiff also alleges, however, that Defendants Truhlar and Downen dropped Plaintiff to the curb and onto the bumper of the vehicle after handcuffing him. Though Defendants dispute this assertion, this is a question of fact. Plaintiff contends that he was subdued and not resisting the officers' efforts to handcuff him. Though Plaintiff's resistence to the officers' efforts to handcuff him is disputed, after restraining Plaintiff with handcuffs, the danger of flight would have been substantially eliminated. In this instance, throwing Plaintiff to the ground after handcuffing would be excessive. "A police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Johnson*, 576 F.3d at 660. There is conflicting testimony as to this fact, and accordingly, motion for summary judgment is inappropriate.

Likewise, Plaintiff alleges that Defendants Truhlar, Downen, and Augustine attacked him while conducting a search of his person. Defendants deny this accusation contending that Plaintiff was struggling while they attempted to conduct their pat down. Plaintiff's assertions are supported by the testimony of Mary Lynn Bagdon who testified that officers struck Martin with their batons or hands, pushed him to the ground, and used excessive force. Though Defendants argue that her testimony is belied by the video, in fact, the video is not dispositive. The video shows Martin being searched by Defendants, and appears to show a struggle. It cannot, however, be ascertained with certainty whether Martin is resisting the officers' instructions. There are also

10

moments where the view of the search is obstructed by officers walking in front of, or standing in front of the camera. Accordingly, there are portions of the search which are not captured on film. Assuming that Martin was not resisting the Defendants' attempts to search him, any beating he received while handcuffed would be unreasonable and excessive, and similarly, Defendants would not be entitled to qualified immunity. Accordingly, summary judgment is denied as to Plaintiff's allegations of excessive force that took place after Plaintiff was handcuffed.

  C. <u>The Village of Romeoville Is Granted Summary Judgment.</u>

Plaintiff has alleged a claim against the Village of Romeoville (the "Village") pursuant to 42 U.S.C. § 1983 and *Monell v. New York Dept. Soc. Serv.*, 436 U.S. 658 (1978). Specifically, Plaintiff alleges that the Village violated his Fourth and Fourteenth Amendment rights by: (1) failing to instruct its officers on the proper use of force of individuals during arrest and custody; (2) failing to instruct members of the Police Department on the proper use of canines in the use of force; and, (3) deliberately and intentionally allowing its officers to utilize a canine knowing that the dog was overly aggressive and non-responsive to commands.

A municipality cannot be held vicariously liable under Section 1983 for the actions of its employees. *Monell*, 436 U.S. at 690. Municipality liability under § 1983 exists only where a policy, custom, or practice is the actual cause of the constitutional injury. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Inadequate training may form the basis of a § 1983 claim "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Proof of poor or inadequate training alone is insufficient. *Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001). A plaintiff must show that the municipal policymakers knew that the police were using excessive force, but did nothing to solve the problem. *Id*.

Here, there is no evidence that the use of excessive force was commonplace, or that the Village policymakers knew or condoned the unconstitutional use of force. Likewise, the record does not show that individual defendants were not properly instructed on the use of force. That Plaintiff was injured during his arrest is not itself evidence of municipality liability. "Adequately trained officers occasionally make mistakes, which says little about the training program or the legal basis for holding the city liable." *Edwards v. Two Unknown Male Chicago Police Officers*, 623 F.Supp. 2d 940, 951 (N.D. Ill. 2009).

Plaintiff ignores Defendants' arguments as to the lack of municipality liability, instead contending only that the Village intentionally destroyed certain records that are relevant to this case. Plaintiff, however, does not offer any explanation or law as to why these alleged actions support liability against the Village for failure to train.

As to Plaintiff's claim of deliberate indifference, Plaintiff claims that the Village deliberately and intentionally used a known aggressive and non-responsive canine. Both Officer Luckett and Django received training and certification through a licensed training facility. Luckett continued his training with Django after graduating from the canine school and also trained specifically on the canine general order adopted by the Romeoville Police Department. There is no evidence on the record to show otherwise.

Based on the record, the Village policy makers were entitled to rely on Luckett and Django's training and certification in placing them in service. Accordingly, the Village of Romeoville is entitled to summary judgment.

D. Thomas Budde Is Granted Summary Judgment

Plaintiff's complaint alleges that Budde used excessive force against Plaintiff while effecting Plaintiff's arrest by striking Plaintiff with his baton while Plaintiff was not resisting. He also alleges that Budde failed to protect Plaintiff from physical harm while in custody.

At the time of Plaintiff's arrest, Budde was the ranking police officer at the scene. Although Budde stated in an affidavit that he did not strike Plaintiff, he later admitted in a deposition that he did strike Martin. The Will County Sheriff's Department cautions that officers should avoid strikes to the head or face.

Budde argues that he is entitled to summary judgment because the force he used was reasonable under the circumstances. Budde does not dispute that he struck Plaintiff with his ASP baton, though the parties do not agree as to where Plaintiff was hit. Budde contends that he struck Plaintiff on the upper left arm/shoulder. Plaintiff, however, maintains that he was struck in the face or head. The video exhibits submitted to this court do not clarify this factual dispute. Given the angle from which the video is filmed, I do not find that it can be determined with certainty whether Plaintiff was struck in the head, or in the arm/shoulder. Likewise, it is impossible to determine with any certainty from the video whether or not Plaintiff was resisting arrest while being handcuffed. Although officers can be heard exclaiming "stop resisting!" Plaintiff's handcuffing occurs off-camera. Accordingly, this is not a case where a videotape capturing events can "blatantly contradict[]" either party's version of the events "so that no reasonably jury could believe" the plaintiff's or defendant's version of the events. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

As the summary judgment states, facts must be viewed in the light most favorable to the non-moving party where there is a genuine dispute as to certain facts. Accordingly, I assume that

13

Plaintiff was not kicking and fighting in an effort to resist arrest following his second stop. I also assume that Plaintiff was struck in the head.

Budde argues that he had justification to use his ASP baton to strike Plaintiff. The Will County Sheriff's Office General Order on Use of Force authorizes "even that force likely to cause death or great bodily harm" when an officer reasonably believes that:

> such force is necessary to prevent the arrest from becoming defeated <u>and</u> the person has . . . threatened infliction of great bodily harm, or is attempting to escape by use of a deadly weapon or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without further delay.

It is undisputed that Plaintiff resisted arrest by leading police on a car chase, breaking traffic laws, and hitting police vehicles. However, as evidenced by the video, there were numerous officers touching Plaintiff and attempting to effect his arrest. Plaintiff was thrown onto the right side of the hood of a car. Budde is seen on the video on the left side of the car. Within seconds of Plaintiff being thrown onto the hood of the car Budde strikes Plaintiff, holds his head down, and then releases his hold on Plaintiff's head and steps away from the vehicle to allow other officers access to assist in the arrest. Mere seconds had passed between Plaintiff's car chase, and his removal from his vehicle. Even if Plaintiff was not kicking in an attempt to resist arrest immediately after being stopped, he had been actively attempting to evade arrest by leading the police in a car chase. Plaintiff was also not yet handcuffed and brought under the control of the officers. Courts have acknowledged that a higher degree of force is justified where a suspect fails to pull over and is finally stopped. *Smith v. Darlin*, No. 97 C 0763, 1999 WL 498586, at *6 (N.D. Ill. July 8, 1999) (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989). Viewing the totality of the circumstances, I do not find that Budde's actions were unreasonable under the circumstances. Likewise, I do not find that Plaintiff's actions were "so plainly excessive" that

Budde should have been on notice that he was violating Plaintiff's constitutional rights. Accordingly, I find that Budde is entitled to qualified immunity.

      E. <u>Officer Chrusciel Is Entitled to Summary Judgment.</u>

Plaintiff's complaint alleges that Officer Chrusciel used excessive force against Plaintiff while effecting his arrest by striking Plaintiff with fists and a baton while Plaintiff was not resisting. Plaintiff does not allege that Chrusciel had any involvement with Defendant after he was placed in handcuffs by other officers. Likewise, Plaintiff does not allege that Chrusciel participated in Plaintiff's first stop. Instead, Plaintiff alleges that Chrusciel used excessive force while attempting to handcuff Plaintiff after he had been removed from his vehicle.

Plaintiff makes three arguments in his effort to defeat summary judgment. First, Martin argues that Officer Chrusciel should have prevented the unwarranted use of the canine Django. Next, Plaintiff argues that Defendant used excessive force by twisting Plaintiff's head and trying to effect his arrest. Third, Plaintiff seems to argue that Chrusceil's compliance with commands means that the use of the canine and the beating were excessive.

Plaintiff's complaint makes no failure to intervene claim against Chrusciel. The Seventh Circuit has noted however, that a response to a motion for summary judgement is not the proper time to assert a new theory of the case. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995). Accordingly, this argument fails.

Next, Plaintiff argues that Chrusciel "actively participated in the arrest and used excessive force in twisting Plaintiff's head where he felt a snap and immediate pain." The facts surrounding Chrusciel's actions are undisputed. Chrusciel put his arm on the left side of Martin's head to apply pressure to the pressure point located at Martin's mandibular angle in an attempt to subdue him. The pressure Chrusciel applied only lasted for seconds. In Plaintiff's

statement of facts, he makes no mention of a "snap" or a "feeling of immediate pain." Plaintiff does state in his deposition that he was put in a headlock by an officer, that the officer turned his head, and that he heard a pop and went limp. The only disputed fact surrounding Chrusceil's involvement in Martin's arrest is whether or not Plaintiff was resisting arrest.

Regardless of whether Plaintiff was resisting arrest or not, Chrusceil is entitled to summary judgment. It is undisputed that Plaintiff was under the influence of crack cocaine and alcohol which left him "paranoid." He further admits that he led police officers on an extended car chase wherein he failed to pull over, follow police instructions, and hit several police vehicles. He also nearly hit an officer with his vehicle when attempting to evade police after the first stop. Several officers descended on Plaintiff in an attempt to restrain and handcuff him without his escape. Importantly, Plaintiff's person had not been searched prior to handcuffing. Given these circumstances, and the fact that Chrusciel's physical contact lasted only "seconds", I do not find that his use of force was excessive in effecting Plaintiff's arrest. Plaintiff demonstrated erratic and violent tendencies that night. Even if Plaintiff had no longer actively been resisting arrest after being removed from his vehicle (a fact in dispute), he had certainly been resisting arrest during the entirety of the car chase. I find that it was reasonable for Chrusciel to use force to protect himself, and his fellow officers, while attempting to handcuff Plaintiff. *See Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001).

## V. CONCLUSION

For the foregoing reasons, Defendants Luckett, the Village of Romeoville, Budde, and Chrusciel's motions for summary judgment are granted. Defendants Truhlar, Down, and Augustine are granted summary judgment as to Plaintiff's allegations that they used excessive force while attempting to handcuff him, however, their motions for summary judgment are

16

denied as to Plaintiff's allegations that they threw him down after being handcuffed, and beat him while searching his person.

ENTER:

James B. Zagel
United States District Judge

DATE: March 30, 2011